INTERSTATE ELECTRIC SUPPLY COMPANY, Plaintiff, v. CONTRAC-
TORS AND ENGINEERS, INC., *et al.*, Defendants (First Bank of Oak
Park, as Trustee, Plaintiff-Appellant; First Bank of Oak Park, Defendant-
Appellee).

First District (3rd Division)   No. 84—1122

Opinion filed September 16, 1987.

Braun & Rivkin, Ltd., of Chicago (Michael A. Braun and Nancy M. Barrett, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Edward C. Fitzpatrick and Shelley L. Rice, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, First Bank of Oak Park, as trustee under land trust No. 11797 (trustee), appeals from the denial of its application for a temporary restraining order and preliminary injunction to halt an Illinois Commercial Code sale of the beneficial interest in the land trust by defendant, First Bank of Oak Park (bank). Trustee also appeals the dismissal of its petition to determine the interest, attorney fees and legal costs assessed against it by bank to satisfy a note secured by the assignment of the beneficial interest in the land trust. We affirm in part, and reverse and remand in part.

This cause of action originated as a complaint to foreclose a mechanic's lien filed by Interstate Electric Supply Company on April 8, 1981, against the property located at 8383 West Belmont, River Grove, Illinois. On June 16, 1981, Contractors and Engineers, Inc., filed a counterclaim in the mechanic's lien action seeking to enforce a mechanic's lien in the amount of $379,337. The only allegation concerning the bank in both the complaint and counterclaim was that it had an interest in the subject premises against which the mechanics'

liens had been filed. Bank was the holder of a $450,000 note secured by a mortgage which constituted a first lien against the property. Bank also held an assignment of the beneficial interest in the land trust which resulted from a construction loan agreement executed between bank and trustee. Trustee is the legal title holder to the property.

On October 30, 1981, Interstate Electric's complaint was dismissed with prejudice. The counterclaim of Contractors and Engineers, Inc., remained pending. Thereafter, on October 30, 1981, the trial court entered a judgment of foreclosure and order of sale of the subject of the land trust. The order of foreclosure and sale indicated that trustee and bank, along with various other defendants, were in default. Bank subsequently moved to vacate the default, and on January 18, 1982, the trial court entered an order amending the October 31, 1981, order of foreclosure and sale to state:

> "The First Bank of Oak Park is found to have a valid and existing first mortgage lien on the subject premises in the amount of $470,600.09 principal and interest through December 16, 1981; title fees of $1,210.00: architectural fees of $2,055.00: interest, costs and attorney fees in an amount to be determined by the Court, which mortgage is superior to all other liens on the subject premises."

Trustee and Louis Ranallo, the then sole beneficiary of the land trust, also filed a motion to vacate the default, open the judgment of foreclosure and order of sale and for leave to defend. In December 1981, prior to the hearing on trustee's motion, Mark A. Condic, Jr., petitioned the trial court to intervene in the mechanic's lien action. Condic sought to stay the enforcement of the foreclosure and alleged that he had loaned money to Ranallo, secured by the assignment of the beneficial interest in the land trust, but subject to the prior assignment to the bank. By order dated January 19, 1982, the trial court granted trustee's motion to vacate the default, open the judgment of foreclosure and order the sale as amended. The trial court denied Condic's petition to intervene. The record reflects that the trial court, trustee and the other parties to the mechanic's lien action proceeded as if the order of January 19, 1982, had vacated the decree of foreclosure. The case was subsequently set for trial on several occasions.

On August 3, 1983, bank scheduled a sale of the beneficial interest in the land trust pursuant to the provisions of the Illinois Commercial Code (Code) (Ill. Rev. Stat. 1985, ch. 26, par. 1—101 *et seq.*) and the terms of the land trust. Trustee and Ranallo filed a motion

for a temporary restraining order and preliminary injunction on August 19, 1983, seeking to stay enforcement of the Code sale. Trustee's motion was granted by order dated August 19, 1983. The order provided for the filing of a response, a reply brief and a hearing date of September 7, 1983. Following a hearing, the temporary restraining order was dissolved and bank agreed to provide trustee with notice of the Code sale date. No Code sale was ever held.

Thereafter, on October 15, 1983, bank was advised that the beneficial interest in the land trust had been transferred from Ranallo to Mark A. Condic III. Condic had obtained a loan and used the proceeds to retire the note secured by the assignment of the beneficial interest in the land trust. Bank was further advised that Condic was paying the interest and attorney fees calculated by it for the retirement of the note under protest.

On November 30, 1983, trustee filed a petition in the mechanic's lien case requesting the trial court to determine the proper amount of attorney fees and interest required to retire the note and redeem the assignment of the beneficial interest in the land trust. By order dated January 27, 1984, the trial court determined that (1) it lacked jurisdiction over the subject matter of trustee's petition, (2) bank had not proceeded to foreclosure and sheriff's sale under its land trust deed, but rather had exercised its right to proceed under the Code and (3) the trust deed had been released and the note satisfied. Trustee's petition was then stricken. On the same day, the trial court granted bank's motion to be dismissed from the case on the ground that trustee's note had been paid and bank had released "its right, title and interest to the subject premises by a Release Deed dated October 11, 1983." No objection was filed by trustee to bank's motion for dismissal from the mechanic's lien case. No appeal has been taken from the order of dismissal. Trustee subsequently filed a motion for reconsideration which was denied. This appeal followed.

Trustee argues that the trial court misconceived bank's remedies and trustee's rights, in the context of the security agreement, which covered both personal and real property interests. According to trustee, this misconception by the trial court resulted in (1) the erroneous denial of trustee's motion for injunctive relief, (2) the loss of trustee's redemption right in the *res* of the land trust and (3) the trial court's dismissal of trustee's petition to determine attorney fees and interest.

We initially note that bank possessed two types of collateral for its note: realty and personalty. The realty, *res*, was pledged pursuant to a land trust deed and the personalty, beneficial interest, was

pledged pursuant to the "Assignment Under Land Trust." The land trust deed provided for a remedy of foreclosure on the real property collateral in the event of default. The assignment supplied bank with the right to sell the beneficial interest in a Code sale. The mechanic's lien action dealt solely with the realty pledged pursuant to the land trust deed.

Trustee first argues that the trial court erroneously applied section 9—501(4) of the Illinois Commercial Code (Code) (Ill. Rev. Stat. 1985, ch. 26, par. 9—501(4)) to the note, and improperly denied trustee's motion for injunctive relief to enjoin bank's proposed Code sale of the beneficial interest in the land trust. Section 9—501(4) of the Code provides:

> "If the security agreement covers both real and personal property, the secured party may proceed under this Part as to the personal property or he may proceed as to both the real and personal property in accordance with his rights and remedies in respect to the real property in which case the provisions of this Part do not apply." (Ill. Rev. Stat. 1985, ch. 26, par. 9—501(4).)

Trustee contends that section 9—501(4) barred a sale of personal property under the Code when bank elected to proceed simultaneously as to both the real and personal property which secured the note. Trustee argues that section 9—501(4) requires a secured party to elect whether to proceed against personalty under the Code, as allowed by an assignment of a beneficial interest, or against both realty and personalty in a foreclosure action pursuant to Illinois mortgage laws. (See Ill. Rev. Stat. 1985, ch. 110, par. 15—101 *et seq.*) According to trustee, once bank participated in the foreclosure proceedings of the mechanic's lien action, any attempt by bank to sell the beneficial interest in the land trust would be controlled by real estate law. Therefore, trustee alleges that the trial court erred in not enjoining bank's proposed Code sale. Bank, however, contends that section 9—501(4) affords a secured party with the right to proceed simultaneously against real property collateral under Illinois mortgage foreclosure law and personal property collateral under the Code.

Our analysis of this issue must necessarily begin with section 9—501(1) of the Code. Subsection (1) provides that when a debtor is in default under a security agreement, a secured party may reduce his claim to judgment, foreclose, enforce his security interest by any available judicial process or utilize any additional rights and remedies set forth in the security agreement. Section 9—501(1) also states that the rights and remedies referred to in it are cumulative. (Ill. Rev.

Stat. 1985, ch. 26, par. 9—501(1); *First National Bank v. Lachenmyer* (1985), 131 Ill. App. 3d 914, 476 N.E.2d 755, *modified on other grounds* (1986), 146 Ill. App. 3d 1035, 497 N.E.2d 844.) Additionally, Illinois courts have recognized subsection (1) to provide creditors with the right to pursue any number of remedies against a debtor until the debt is satisfied. (*Kramer v. Exchange National Bank* (1985), 139 Ill. App. 3d 1093, 488 N.E.2d 568.) We do not believe that subsection (1) supports trustee's restrictive interpretation of subsection (4).

■■ Initially, bank and trustee entered into two separate security agreements; the assignment of the beneficial interest in the land trust and the trust deed covering the *res* of the land trust. Clearly, section 9—501(4) applies only to one security agreement covering both real and personal property. Moreover, the assignment specifically provided bank with the right to sell the beneficial interest pursuant to the Code. However, notwithstanding the aforementioned distinctions, trustee continues to argue that section 9—501(4) applies to the present circumstances and is a limitation on the cumulative remedies afforded a secured party in section 9—501(1). We disagree.

This court in the case of *Kramer v. Exchange National Bank* (1985), 139 Ill. App. 3d 1093, 488 N.E.2d 568, determined that section 9—501(4) provides a secured party with the option of proceeding in one action or two separate actions. In *Kramer,* the plaintiffs defaulted on a note secured by both real and personal property. The personal property was located in Illinois, and the real property was located in New York. The defendant initially filed a foreclosure action against the real property located in New York, and then filed notice of a Code sale of the personal property located in Illinois. The plaintiffs argued that section 9—501(4) of the Code barred a sale of their personal property because the defendant had elected to proceed simultaneously as to both the real and personal property. The *Kramer* court interpreted section 9—501(4) to provide a secured party with the option of proceeding in one action as to the real property, or two separate actions as to the real and personal property. According to the *Kramer* court, if a secured party chooses to proceed in a single action, the laws of real property would govern the proceeding. However, if a secured party opts to proceed in two separate actions, the action involving personal property must comply with the applicable Code requirements. A separate action regarding real property collateral would not be subject to Code provisions because section 9—104 exempts such collateral. 139 Ill. App. 3d 1093, 1099, 488 N.E.2d 568, 572; Ill. Rev. Stat. 1983, ch. 26, par. 9—104.

Moreover, we find no merit in trustee's reliance on the case of

*Hildner v. Fox* (1974), 17 Ill. App. 3d 97, 308 N.E.2d 301, in support of its proposition that once bank participated in the mechanic's lien action it no longer had available to it a Code sale of the personal property collateral. In *Hildner*, the defendant repossessed and sold the personal property which secured the plaintiff's debt without notice. Notice of the sale of personal property is required by section 9—504(3) of the Code. (Ill. Rev. Stat. 1985, ch. 26, par. 9—504(3).) The issue in *Hildner* was limited solely to whether the defendant's failure to give notice of the sale of plaintiff's collateral under the Code extinguished the plaintiff's secured debt. The *Hildner* court neither analyzed section 9—501(4) nor addressed the issue raised in the present case. While the *Hildner* court made reference to section 9—501(4), the court simply noted that because the defendant chose to proceed only against the plaintiff's personal property, the defendant was required to comply with the Code's notice requirement. (*Hildner v. Fox* (1974), 17 Ill. App. 3d 97, 100-01, 308 N.E.2d 303-04.) Clearly, *Hildner* has no application to the present case. We, therefore, find no error in the trial court's application of section 9—501(4) to the note and bank's request for a Code sale of the beneficial interest of the land trust.

◼ We next address trustee's argument that, notwithstanding our interpretation of Code, sections 9—501(1) and 9—504(4), the assignment of the beneficial interest in the land trust was in the nature of an equitable mortgage. As such, the beneficiary's right of redemption could not be defeated by a Code sale of the beneficial interest. Trustee therefore contends that the trial court erred in denying its motion for injunctive relief.

The decision to grant or deny preliminary injunctive relief is a matter which rests within the sound discretion of the trial court. A trial court's denial or granting of such relief will not be disturbed on appeal absent a showing of an abuse of the trial court's discretion. Our role as a reviewing court is therefore limited to an examination of the merits only to the extent necessary to determine whether the trial court's decision is contrary to the manifest weight of the evidence. *McRand, Inc. v. Van Beelen* (1985), 138 Ill. App. 3d 1045, 1050-51, 486 N.E.2d 1306, 1311.

Whether injunctive relief should have issued here depends upon the nature of the beneficial interest in the land trust at issue. Specifically, was the assignment of the beneficial interest in the nature of an equitable mortgage or a personal property security interest? Knowledge of the distinction between an equitable mortgage and a personal property security interest is essential to an understanding of trustee's

argument that the assignment of the beneficial interest in the land trust was an equitable mortgage. In an Illinois land trust, both the legal and equitable title to the trust property lie with the land trustee. A land trust beneficiary retains what is referred to as a personal property interest because the beneficiary does not possess a direct interest in the real estate *res* of the trust. The establishment of a land trust does not provide the beneficiary with an interest in the real estate itself. As a result, a land trust beneficiary may assign or transfer its beneficial interest because such interest is only in personal property. *Melrose Park National Bank v. Melrose Park National Bank, Trustee* (1984), 123 Ill. App. 3d 282, 285, 462 N.E.2d 741, 743.

The creation of a security in interest in personal property is governed by article 9 of the Illinois Uniform Commercial Code. (Ill. Rev. Stat. 1985, ch. 26, par. 9—101 *et seq.*) Section 9—501 of the Code provides in relevant part:

"(1) When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this Part ***. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. ***

(2) After default, the debtor has the rights and remedies provided in this Part, [and] those provided in the security agreement ***." Ill. Rev. Stat. 1985, ch. 26, pars. 9—501(1), (2).

Section 9—503 of the Code provides that "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action." (Ill. Rev. Stat. 1985, ch. 26, par. 9—503.) Here, the assignment provided bank with the right to the beneficial interest securing the note through a Code sale.

■ Generally, the assignment of a beneficial interest in a land trust as security for a note does not convert it into a real estate mortgage so as to permit a right of redemption. (*Melrose Park National Bank v. Melrose Park National Bank, Trustee* (1984), 123 Ill. App. 3d 282, 285, 462 N.E.2d 741, 743.) Trustee, however, contends that such a conversion occurred with respect to the agreement in this case based on Illinois mortgage law. According to Illinois mortgage law, "[e]very deed conveying real estate, which shall appear to have been intended only as security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage." (Ill. Rev. Stat. 1985, ch. 95, par. 55.) Therefore, if a deed in real estate is

offered as security for a loan, it will be determined to be an equitable mortgage under Illinois mortgage law. An equitable mortgage is subject to the right of redemption. However, pursuant to the Code, if only the beneficial interest in a land trust, as opposed to a deed in real estate, is pledged as security for a loan, the resulting security interest may be determined to be an interest in personalty. Contrary to an equitable mortgage, a personal property security interest in a land trust is not subject to the right of redemption. *Melrose Park National Bank v. Melrose Park National Bank, Trustee* (1984), 123 Ill. App. 3d 282, 286, 462 N.E.2d 741, 743-44.

Trustee argues that bank possesses an equitable mortgage rather than a personal property security interest in the land trust. Therefore, bank was precluded from obtaining possession through the utilization of a Code sale. Under such reasoning, trustee contends that the trial court's denial of trustee's motion for injunctive relief was in error because bank should have been required to proceed in accordance with the Illinois mortgage foreclosure act (Ill. Rev. Stat. 1985, ch. 110, par. 15—101 *et seq.*) to obtain possession.

■ The courts have developed certain guidelines to ascertain the intent of the parties from a trust instrument and to determine whether an equitable mortgage or a personal property security interest exists. These guidelines include whether (1) the trust agreement contains a provision for sale of the real estate upon default, (2) the land trust was established for purposes other than as security for a debt, (3) the pledge of the beneficial interest was subsequent to the creation of the land trust and (4) the pledge security transaction is of the trust beneficial interest only. (*Horney v. Hayes* (1957), 11 Ill. 2d 178, 142 N.E.2d 94; *Quinn v. Pullman Trust & Savings Bank* (1968), 98 Ill. App. 2d 402, 240 N.E.2d 791; *Melrose Park National Bank v. Melrose Park National Bank, Trustee* (1984), 123 Ill. App. 3d 282, 286, 462 N.E.2d 741, 745.) Not all of the guidelines need to be satisfied before a court may determine that a personal property security interest rather than an equitable mortgage is present. Instead, "the facts in each case must be considered together and the court must decide whether, on balance, the facts are more indicative of an intent to create a personal property security interest or an intent to create an equitable mortgage." 123 Ill. App. 3d 282, 288, 462 N.E.2d 741, 745.

■ Here, the land trust was created on September 11, 1979, while the pledge of the beneficial interest to secure the construction loan agreement occurred on March 25, 1980, approximately 6½ months later. Additionally, neither the trust nor the assignment of the beneficial interest contains provisions for the sale of the real estate

*res* of the trust upon default. The pledge security transaction was of the trust beneficial interest only. As such, under the aforementioned documents, bank would only be entitled to possession of the beneficial interest. Based upon our consideration of the facts of this case, we believe that on balance, the facts are more indicative of an intent to create a personal property security interest rather than an equitable mortgage. Therefore, the trial court's finding that the assignment of the beneficial interest was not intended to be an equitable mortgage was not against the manifest weight of the evidence presented.

■ Trustee next argues that the trial court erred in dismissing its petition requesting a hearing to determine the reasonableness of the amount of attorney fees and legal costs assessed against it by bank, and the rate of interest charged by bank to redeem the beneficial interest and retire the note.

The denial of trustee's motion for injunctive relief to stay bank's proposed Code sale of the beneficial interest in the land trust occurred in the mechanic's lien action. The natural result of this denial was that trustee had to either redeem the beneficial interest in the land trust prior to bank's Code sale or forfeit its ownership interest permanently. In order to redeem the beneficial interest, trustee was required to retire the note. Prior to the Code sale, trustee tendered $550,000 to bank under protest for redemption of the beneficial interest in the land trust. Trustee subsequently received an itemization from bank indicating that the attorney fees incurred by bank and owed to bank by trustee were $40,258.40. The itemization indicated that the interest on the note totalled $107,715.13. As support for the amount of attorney fees claimed, bank attached a four-page listing of the legal work engaged in by bank's attorneys. Bank deducted both the interest and attorney fees from trustee's payment of $550,000.

We initially address trustee's contention that it is entitled to a hearing on the reasonableness of the aforementioned attorney fees. The right to redeem the beneficial interest in a land trust prior to a Code sale is codified at section 9—506 of the Code. (Ill. Rev. Stat. 1985, ch. 26, par. 9—506.) This section provides:

> "At any time before the secured party has disposed of collateral or entered into a contract for its disposition under Section 9—504 or before the obligation has been discharged under Section 9—505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for dis-

position, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses." (Ill. Rev. Stat. 1985, ch. 26, par. 9—506.)

Trustee utilized section 9—506 to redeem the beneficial interest in the land trust prior to bank's Code sale.

Pursuant to the plain language of section 9—506, bank is entitled to reasonable attorney fees and legal expenses to the extent provided for in the note and assignment. Such fees and expenses are allowable only if they are not prohibited by Illinois law. Trustee does not contest bank's entitlement to attorney fees and legal expenses. Rather, trustee argues that bank is not entitled to a unilateral determination of the amount of such fees and costs. Trustee contends that because such fees and costs are provided for by statute, it is entitled to a hearing on their reasonableness. We agree.

Concomitant with bank's entitlement to attorney fees and legal costs incurred as a result of trustee's default on the note is bank's obligation to satisfactorily account for such fees and costs and establish their reasonableness. Clearly, the determination of reasonableness must rest with an entity other than the one claiming a right to attorney fees and legal costs. We therefore believe that implicit in section 9—506 is the right of a redeeming party to a hearing on the reasonableness of the attorney fees and legal costs assessed against it by a secured party upon redemption. Accordingly, trustee was entitled to a hearing on the reasonableness of the bank's assessment concerning its attorney fees and legal costs.

■ We next address whether the trial court possessed the requisite jurisdiction to conduct a hearing on the reasonableness of the attorney fees and legal costs bank assessed against trustee. Bank contends that trustee's petition failed to allege a jurisdictional basis under which the trial court could conduct such a hearing. However, based on our examination of the record, we believe that the trial court determined that it lacked jurisdiction to hear trustee's petition because the note had been satisfied and the trust deed released pursuant to trustee's redemption. We believe that the trial court erred in this regard.

Initially, our review of the record indicates that the trial court entered the order which sanctioned bank's decision to utilize a Code sale of the beneficial interest in the land trust. The court also presided over the hearings on the issue of whether the security interest was an equitable mortgage or a personal property security interest. The court additionally determined the issues raised in the mechanic's lien action.

Our review of the record further establishes that bank served trustee with notice of a proposed Code sale on or about August 3, 1983. Thereafter, trustee filed its motion to enjoin the proposed sale in the mechanic's lien action. Trustee's request for injunctive relief was denied in the mechanic's lien action. Therefore, a substantial portion of the attorney fees and legal costs claimed by bank resulted from its participation in the mechanic's lien action. Trustee then tendered the amount bank claimed necessary for redemption under protest, and subsequently filed a petition with the trial court in the mechanic's lien action requesting a determination of the reasonableness of the attorney fees, legal costs and interest rate claimed by bank to be a result of trustee's default and subsequent redemption.

Here, a final determination was never made on the dollar amount necessary to redeem the beneficial interest in the land trust and retire the note. Therefore, the issue of attorney fees and legal costs remained unresolved at the time the trial court denied trustee's petition and determined that the note had been satisfied and the trust deed released. Absent final resolution by the trial court of the reasonableness of the attorney fees and costs requested by bank, we believe that the trial court was precluded from deciding that a satisfaction and release of the note and trust deed had occurred. Moreover, as bank was a necessary party to such a determination, the trial court erred in dismissing bank as a party to the mechanic's lien action in which trustee's petition had been pending. Under these circumstances, we conclude that the trial court clearly possessed jurisdiction to determine the reasonableness of the fees and costs requested by bank to satisfy the note and redeem the beneficial interest in the land trust.

We therefore believe that a party redeeming a security interest pursuant to section 9—506 is entitled to a hearing on the reasonableness of the attorney fees and legal costs assessed against it by the secured party in the action where such proceedings were filed. While we recognize that trustee does not appeal from the order dismissing bank, a jurisdictional error of a trial court is never waived by the failure to properly raise such an issue on appeal. Trustee is therefore entitled to a hearing on the reasonableness of the bank's assessment concerning its attorney fees and legal costs in the trial court. Accordingly, the orders dismissing trustee's petition and the bank as a party to the underlying mechanic's lien action are vacated, and this issue is remanded to the trial court for an evidentiary hearing on the reasonableness of the attorney fees and legal costs requested by bank.

Trustee lastly contends that we should determine the proper rate of interest bank may recover in connection with trustee's redemption

of the beneficial interest and satisfaction of the note. This issue was not addressed by the trial court and is not properly the subject of this appeal. We therefore cannot, and will not, address the arguments raised by trustee and bank concerning the merits of this issue.

Accordingly, the judgment of the trial court is affirmed in part and reversed and remanded in part.

Affirmed in part; reversed and remanded in part.

McNAMARA, P.J., and WHITE, J., concur.