Ronald T. VAN EGMOND and Brenda C. Van Egmond, Plaintiffs–Appellants,

v.

Clair Elwin HORSMAN and Marie Horsman, Defendants– Appellees.

No. 99CA1399.

Colorado Court of Appeals, Div. I.

Aug. 17, 2000.

Braden Frindt Stinar Renfro & Jolivet LLC, Ronald Frindt, Colorado Springs, Colorado, for Plaintiffs–Appellants.

Alan L. Bugg, Colorado Springs, Colorado, for Defendants–Appellees.

Opinion by Judge KAPELKE.

In this action to foreclose on a deed of trust on real property and a security interest in personal property under a security agreement executed by defendants, Clair Elwin and Marie Horsman, plaintiffs, Ronald T. and Brenda C. Van Egmond, appeal from the order entered by the trial court determining that a sheriff's sale had covered only the real property and did not include the personal property. We affirm the order and remand the cause with directions.

On July 6, 1992, plaintiffs and defendants entered into a contract for the purchase by defendants of a salvage yard owned by plaintiffs. Pursuant to the contract, defendants executed a promissory note in favor of plaintiffs in the amount of $80,000. The note was secured by a deed of trust covering the real property and by a separate security agreement covering the personal property of the business.

In July 1993, defendants defaulted in the payment of installments due on the promissory note, and on February 16, 1994, plaintiffs filed this action. Thereafter, upon motion, the court appointed plaintiffs as receivers for the property.

Plaintiffs filed a motion for judgment on the pleadings, which the court granted at a hearing on October 10, 1995, finding that defendants had not filed an answer to the complaint. At the hearing, a dispute arose as to whether certain items of personal property at the salvage yard were subject to the security agreement.

The court entered an order at the hearing authorizing a sheriff's sale of the real property under the deed of trust. However, the court stayed the sale of the personal property under the security agreement and indicated it would conduct a separate hearing concerning that property.

Plaintiffs scheduled the sheriff's sale of the real property for December 19, 1995, gave the required notices, and published the sale in the newspaper pursuant to C.R.S. § 13–56–201, C.R.S.1999. The notice and publication referred only to the real property and did not mention the personal property or the security agreement.

At the second hearing, which took place on November 20, 1995, the parties reached a stipulation with respect to the personal property items which could be sold under the security agreement.

On December 18, 1995, the court entered a decree authorizing sale by the sheriff of the personal property.

The sale of the real property was held the following day, on December 19, 1995. Plaintiffs were the successful bidders, bidding $131,466.70, which was the entire remaining balance of the indebtedness owed by defendants.

On December 27, 1995, the sheriff filed a report and return of sheriff, stating that he had sold "the subject real property at public auction to [plaintiffs]" and that he had issued to plaintiffs "a certificate of purchase to the subject real property."

On January 16, 1996, defendants filed a motion to close the receivership and for return of the personal property on the basis that the indebtedness had been satisfied as a result of the deed of trust foreclosure on the real property. In their response, plaintiffs admitted that no sale of the personal property had been held yet, and stated that a sheriff's sale was scheduled to be held on February 13, 1996, pursuant to the December 18, 1995, decree of foreclosure.

On February 14, 1996, plaintiffs filed a motion seeking leave of the court to apportion the judgment debt and to amend their bid. In their motion, plaintiffs again acknowledged that the sheriff had not yet conducted a public sale of the personal property collateral under the security agreement.

On February 23, 1996, defendants filed an affidavit of publication of the notice of sheriff's sale that had been scheduled for February 13, 1996, of the personal property subject to the security agreement.

On March 7, 1996, plaintiffs filed an amended motion for leave to apportion the judgment debt and amend the bid. In that motion they again pointed out that the sheriff had not yet conducted a public sale of the collateral under the security agreement.

On March 21, 1996, the court entered an order determining that the foreclosure sale of the real estate satisfied the judgment and that the security agreement no longer covered the personal property.

On April 2, 1996, following a hearing, the court granted defendants' motion to close the receivership and for return of the personal property. The court found "that the foreclosure sale of real estate [had] satisfied [the] judgment [in the case]" and that "the security agreement between the parties no longer secure[d] the property described therein." The court further found that the bid at the foreclosure did not include the personal property under the security agreement. The court allowed defendants 15 days to retrieve their personal property.

On April 10, 1996, defendants filed a "Motion for Additional Time to Recover Property," asserting, among other things, that plaintiffs had sold the personal property to a third party.

In plaintiffs' motion for reconsideration of that order, they acknowledged that their "bid on the foreclosure on the Deed of Trust on December 19, 1995 in the amount of $131,466.70 satisfied the Decree of Foreclosure entered by the Court on November 8, 1995."

On July 7, 1997, more than a year and a half after the foreclosure sale, the sheriff filed an amended report and return of sheriff, stating that the personal property held as collateral under a security agreement had been sold at the December 19, 1995, foreclosure sale.

On December 9, 1997, plaintiffs filed a C.R.C.P. 60(b) motion for relief from the court's April 2, 1996, order granting defendants' motion to close receivership and return property. Plaintiffs argued that the sheriff's amended report, reciting that the sale had included the personal as well as the real property, constituted new evidence and thus entitled them to relief.

On June 3, 1999, the court entered its order determining that the sheriff's sale conducted on December 19, 1995, had not included the personal property subject to the security agreement. The court noted that the "Decree of Foreclosure of Security Agreement" entered on December 18, 1999, specified a sheriff's sale at public auction "in the manner described by the statute."

■ Plaintiffs contend that the sheriff's sale conducted on December 19, 1995, included the personal property and that defendants were therefore not entitled to a return of that property. We disagree.

The trial court found with record support that the sheriff's sale had included only the real property, and not the personal property. As stated, the notice of the sale referred only to real property, and the report the sheriff filed following the sale stated that he had sold the real property to plaintiffs and that he had issued plaintiffs a certificate of purchase to the real property.

Significantly, plaintiffs themselves acknowledged in several pleadings they filed that there had not yet been a sale of the personal property, and they filed a notice of publication indicating that such a sale was to be held on February 13, 1996. In addition, they admitted in a motion for reconsideration that the foreclosure on the real property had satisfied the indebtedness. Thus, the record amply supports the trial court's finding that the personal property had not been sold at the sheriff's sale on December 19, 1995.

■ Further, as the trial court found, even if there had been a sale of the personal

property by the sheriff on December 19, 1995, such sale would have been void for lack of proper notice.

As noted, the decree of foreclosure concerning the personal property stated that the sheriff's sale would be "in the manner described by the statute." The trial court found that this language of the decree "directly implicates" § 13–57–101, C.R.S.1999. That section provides that: "No goods or chattels shall be sold by virtue of any execution unless previous notice of such sale has been given for at least ten days successively in the same manner as required in the sale of real estate upon execution."

As the trial court pointed out, the parties acknowledged that no such ten-day notice of sale had been given, as required in § 13–57–101. Nevertheless, plaintiffs urge that the applicable statute they were to comply with was § 4–9–504, C.R.S.1999, rather than § 13–57–101. Section 4–9–504 requires that "reasonable notification of the time and place of any public sale" shall be sent to the debtor. Again, the record does not indicate that any such notification was sent to defendants here.

Plaintiffs go on to argue, however, that defendants waived their right to reasonable notification by making a judicial admission. Specifically, plaintiffs claim that defendants' stipulation concerning which items of personal property were subject to the security agreement amounted to a waiver of the "reasonable notification" requirement. We reject this assertion.

There is simply nothing in the stipulation that can be read to constitute a waiver by defendants of their right to be notified of the time and place of sale.

As an additional and apparently alternative argument, plaintiffs urge that the notification provisions of the Uniform Commercial Code are inapplicable here because plaintiffs were foreclosing as to both the real property and the personal property. We also reject this contention.

Plaintiffs rely on § 4–9–501(4), C.R.S.1999, which states, in pertinent part, that: "If the security agreement covers both real and personal property, the secured party may . . .

proceed as to both the real and the personal property in accordance with his rights and remedies in respect of the real property in which case the provisions of [part 5 of article 9 of the U.C.C.] do not apply."

Here, however, "the security agreement" did *not* cover "both the real and personal property." The security agreement itself covered only the personal property collateral, while the real property was collateral pursuant to an entirely separate deed of trust. Under these circumstances, § 4–9–501(4), which allows foreclosure of personal property as part of the real estate foreclosure proceedings, does not apply. *See* R. Anderson, *Uniform Commercial Code* § 9–501:110 (1999) ("UCC § 9–501(4) applies only when there is one security agreement covering both real and personal property, and is not applicable where there is a separate security agreement as to each kind of property"); *see also Interstate Electric Supply Co. v. Contractors & Engineers, Inc.,* 161 Ill.App.3d 676, 113 Ill.Dec. 373, 515 N.E.2d 182 (1987).

Accordingly, as the trial court recognized, because no notice of sale was given by defendants with respect to the personal property, any sale of such property would have been a nullity.

Therefore, the trial court properly ruled that the foreclosure sale of the real property for the full amount of the indebtedness had extinguished defendants' obligation to plaintiffs.

The order is affirmed, and the cause is remanded for such further proceedings as the trial court deems appropriate.

Judge METZGER and Judge JONES concur.